IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **CHRISTOPHER BLAKE and** | : | **CIVIL ACTION** |
| **JAMES ORKIS, individually and on** | : | |
| **behalf of all others similarly situated,** | : | |
| Plaintiffs, | : | No. 13-6433 |
| | : | |
| v. | : | |
| | : | |
| **JPMORGAN CHASE BANK, N.A.,** | : | |
| **CHASE BANK USA, N.A.,** | : | |
| **JPMORGAN CHASE & CO., and** | : | |
| **CROSS COUNTRY INSURANCE** | : | |
| **COMPANY,** | : | |
| Defendants. | : | |

# M E M O R A N D U M

**STENGEL, C.J.**                                                                                     **March 28, 2018**

## I.   Introduction

This is a putative class action brought by homeowners claiming violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 (RESPA). The plaintiffs claim that the defendants carried on a "captive reinsurance scheme," through which they enjoyed kickbacks, referrals, and fees that are prohibited by RESPA. Defendants move to dismiss the amended complaint as untimely. (Doc. No. 52.) Plaintiffs oppose the motion. (Doc. No. 55.)

1

## II. Background

### A. The Nature of Plaintiffs' RESPA Claims

Many people who purchase a home cannot afford to make a 20% down payment. To protect lenders in the event of default, homeowners who are unable to make a 20% down payment are required to purchase private mortgage insurance. Once a homeowner enters into a mortgage insurance contract with an insurance company (an "insurer"), often times, the insurer then enters into a separate "reinsurance" arrangement with another company (a "reinsurer"). In theory, and under RESPA, the reinsurer is required to assume part of the risk that the insurer took on when it entered into a contract with the homeowner.

In this case, the plaintiffs allege that the defendant insurers, lenders, and reinsurers have colluded to create a scheme that violates RESPA. The plaintiffs maintain that the lenders, as a general practice, form subsidiary companies that become the reinsurers. These lenders then systematically refer homeowners to the insurers to buy mortgage insurance. In exchange for a constant stream of profit-producing homeowner-borrowers, the insurers then pay a kickback to the reinsurer who, as a subsidiary, is really just an extension of the lender. The plaintiffs claim that this "pay-to-play" scheme harms homeowners because, by colluding, the insurers, reinsurers, and lenders, were able to reduce competition in the mortgage insurance market, thereby increasing the premium payments the homeowner-plaintiffs are required to pay to maintain their mortgage insurance.

There is nothing inherently wrong with—or unlawful about—reinsurance contracts. Nonetheless, RESPA prohibits certain captive reinsurance schemes that result in "sham" services. See Alston v. Countrywide Fin. Corp., 585 F.3d 753, 755–57 (3d. Cir 2009) (explaining how certain captive reinsurance schemes, like the one alleged here, may violate RESPA). Specifically, Section 8(a) of RESPA prohibits fees and kickbacks paid in exchange for business referrals involving federally related mortgage loans. 12 U.S.C. § 2607(a). Section 8(b) prohibits unearned fees: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." Id. § 2607(b). In this case, the plaintiffs allege that the defendants violated these provisions of RESPA because: (1) they systematically gave and received kickbacks; (2) the reinsurers did not assume any real risk; and (3) the reinsurers never "actually performed" any true reinsurance services.

### B. Procedural Background

The plaintiffs filed their initial complaint on November 4, 2013, asserting claims for RESPA violations and common law unjust enrichment. (Doc. No. 1.) Shortly thereafter, the defendants moved to dismiss the plaintiffs' RESPA claims as untimely. (Doc. No. 13.)

Prior to receiving a disposition on the motion to dismiss, on May 22, 2014 the parties filed a joint motion to stay all proceedings pending the Third Circuit's decision in Riddle v. Bank of America Corp., 588 F. App'x 127 (3d Cir. 2014). (Doc. No. 25.) Riddle addressed the issue of equitable tolling with respect to RESPA's statute of

3

limitations. After the Third Circuit decided Riddle, the stay was lifted on October 28, 2014. (Doc. No. 27.) I then ordered the parties to file supplemental briefs on the motion to dismiss. Before the motion to dismiss was decided, however, on February 19, 2015, the parties filed another joint motion to stay all proceedings pending the Third Circuit's decision in Cunningham. (Doc. No. 30.) In the joint motion to stay, the parties agreed that "the ultimate resolution of the central issue in the Cunningham action, *i.e.* the applicability and application of the doctrine of equitable tolling, has a very reasonable likelihood of informing this Court on the resolution of such matters in this case, and advancing the ultimate disposition of this action." (Id. at 2.) Months later, during this Cunningham stay, the Consumer Financial Protection Bureau ("CFPB") issued a decision in a landmark RESPA case, holding that RESPA's statute of limitations did not bar claims for kickbacks that occurred after the closing of home loans.

Several months after this CFPB decision, the Third Circuit decided Cunningham. The plaintiffs in Cunningham were homeowners who brought the same type of RESPA claim—based on reinsurance kickbacks—that the plaintiffs brought in this case. 814 F.3d at 158. Those plaintiffs did not file their complaint until years after RESPA's one-year statute of limitations had expired. Id. They relied on equitable tolling to argue that their claims were timely. Id. In fact, they made the same exact argument that has previously been made in this litigation: the first time they became aware of their RESPA claims was when they received letters informing them of the potential viability of the claims. Id. at 162. The Third Circuit expressly rejected this equitable tolling argument. Id. at 160–62. It found that the plaintiffs became aware of their RESPA claims much earlier: on the date

4

of closing when they read certain disclosures that explained reinsurance. Id. at 161–64. The court held that the Cunningham plaintiffs were not reasonably diligent in bringing their claims, which is required of them to enjoy the doctrine of equitable tolling based on fraudulent concealment. Id. at 163–64.

The defendants then moved to lift the stay on July 15, 2016, which the plaintiffs did not oppose, and I ordered the stay lifted on February 17, 2017. On July 20, 2016, plaintiffs moved for leave to file an amended class action complaint (Doc. No. 34) and defendants opposed the motion. (Doc. No. 35.) The plaintiffs asserted that their proposed RESPA claim was substantively identical to the RESPA claim alleged in the original complaint, and that the only difference was that they no longer relied on equitable tolling. Instead, plaintiffs argued that their RESPA claims were triggered each time a kickback payment was made under the continuing violations doctrine. Plaintiffs also sought to amend the complaint to add RICO claims.

On April 26, 2017, I entered an Order granting in part and denying in part plaintiffs' motion to amend the complaint. (Doc. No. 47.) I denied plaintiffs' motion to amend the complaint to include RICO claims in Counts One and Two. (Id.) I granted plaintiffs' complaint with respect to the RESPA claim in Count Three. (Id.) My memorandum opinion analyzed the application of the continuing violations doctrine to claims arising under RESPA, including the plain text of the statute and relevant Third Circuit and Supreme Court precedent. Under the doctrine, "the statute of limitations runs from the date of the last alleged violation rather than the first." (Doc. No. 48 at 11 (citing Burnette v. City of Phila., No. 02-5369, 2003 WL 21293682, at *2 (E.D.Pa. Jan. 14.

5

2003)) (citing Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2011)).) I held that defendants violated RESPA each time they allegedly paid an illegal kickback or fee, or made an illegal referral, in connection with private mortgage insurance premiums. In other words, each violation triggered a new statute of limitations period under the continuing violations doctrine and plaintiffs' RESPA claim was timely.

On June 14, 2017 defendants filed the instant motion to dismiss the amended complaint. (Doc. No. 52.) Plaintiffs opposed defendants' motion. (Doc. No. 55.) Defendants filed a reply on August 31, 2017. (Doc. No. 56.) Plaintiffs then moved for leave to file a sur-reply (Doc. No. 57) which defendants opposed. (Doc. No. 58.) On January 23, 2018, defendants filed supplemental authority in further support of their motion to dismiss (Doc. No. 61) and plaintiff filed a response. (Doc. No. 62.)

**III. Legal Standard**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To sustain this challenge, the factual allegations in the complaint must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Conclusory allegations are insufficient to support a facially plausible claim; the facts asserted must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. Twombly,

550 U.S. at 555; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984). The court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, 550 U.S. at 563 n. 8 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679; see also Phillips, 515 F.3d at 232-34 (holding that: (1) factual allegations of a complaint must provide notice to the defendant; (2) the complaint must allege facts indicative of the proscribed conduct; and (3) the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555) (alterations in original)).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need not contain detailed factual allegations, but must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Twombly, 550 U.S. at 545. A pleading that

7

offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

IV. **Discussion**

    **A. The continuing violations doctrine is generally applicable to plaintiffs' RESPA claims**

Defendants move to dismiss plaintiffs' amended complaint for failure to state a claim pursuant to Rule 12(b)(6) arguing that plaintiffs' RESPA claims are barred by the one-year statute of limitations because the continuing violations doctrine is inapplicable. (Doc. No. 52.) Defendants acknowledge that I expressly held that the doctrine of continuing violations applies to plaintiffs' RESPA claims when I decided plaintiffs' motion for leave to file an amended complaint. Notwithstanding, defendants assert that under the different standard for a motion to dismiss, the doctrine is inapplicable and plaintiffs' RESPA claims are untimely. (Doc. No. 52 at 11.) I disagree.

Defendants rely on an identical set of arguments that I previously rejected in granting plaintiffs' motion for leave to amend. For instance, defendants argue that the plain text of the RESPA statute supports a finding that the statute of limitations accrues at the closing of a loan. I previously rejected this argument reasoning,

> I agree that ordinarily RESPA's statute of limitations begins running on the date that a homeowner closes on his or her home loan. However, the question of when a statute of limitations begins to run (by default) is entirely separate from the question of whether or not subsequent kickbacks, fees, and referrals are violations of RESPA that can trigger new limitations periods . . . In other words, even though RESPA's statute of limitations begins to run at the moment the plaintiffs close on their loan, this does not affect the possibility that a subsequent pattern of

kickbacks and fees (prohibited by RESPA) amounts to a "continuing violation," thereby re-setting the statute of limitations upon each new violation.

(Doc. No. 47 at 11.)

Likewise, defendants argue that a finding that the continuing violations doctrine applies to RESPA violations runs contrary to the Third Circuit's holdings in Cunningham and Riddle, discussed supra. My finding that the continuing violations doctrine is applicable to RESPA violations does nothing to disturb these holdings. These cases analyzed only the application of equitable tolling to RESPA violations. As noted in my Memorandum Opinion, "[t]he equitable tolling doctrine and the continuing violations theory are two separate and distinct legal principles subject to entirely different analyses." (Doc. No. 48 at 18.)

Defendants acknowledge that Riddle and Cunningham analyzed only whether the doctrine of equitable tolling applied to RESPA's statute of limitations. (Id. at 18-19.) And yet, defendants submit that application of the continuing violations doctrine would "result in the very same problem" that concerned the Court in Cunningham and Riddle—that it would extend the statute of limitations indefinitely. (Doc. No. 52 at 12.) I disagree. Under this doctrine, the plaintiffs may only recover for each allegedly unlawful referral or kickback in the one-year period prior to the most recent violation.[1] It does not permit plaintiffs to recover for damages dating back to the closing of the loan and does not

---

1 Defendants seem to ignore that the complaint only alleges violations occurring within one year prior to the accrual date. (Am. Compl. at ¶ 174.)

9

extend the statute of limitations indefinitely.[2] Therefore, this holding does not nullify RESPA's statute of limitations.

Next, defendants criticize my reliance on the CFPB's decision in PHH, an issue which was also expressly addressed in my opinion. In that case, the CFPB concluded that the defendant "violated RESPA every time it accepted a reinsurance payment." In the matter of PHH Corp., No. 2014-CFPC-0002 (CFPB, Jun. 4, 2014.) At the outset, my holding did not hinge on this finding. I expressly noted,

> Even if one considers the CFPB's decision to be lacking in precedential value, that still would not preclude me from finding, based on RESPA's statutory language alone, each violation of RESPA triggers a one-year limitations period.

(Doc. No. 47 at n. 6.) And yet, defendants again argue that my reliance on this decision was misplaced because it was vacated in part and remanded by the U.S. Court of Appeals for the D.C. Circuit. As previously noted, the Circuit Court did not vacate the decision on the merits but "purely on unrelated constitutional grounds," expressly leaving the statute of limitations issue to the CFPB.[3] (Doc. No. 47 at 14-15.) Then on February 7, 2018, the Circuit Court issued its en banc opinion. 881 F. 3d 75 (D.C. Cir. 2018). The Court reiterated that their role on appeal was only to decide the constitutional question, noting that "[t]he panel opinion, insofar as it related to the interpretation of RESPA and its

---

2 As discussed more fully below in section B, there are two distinct theories of the continuing violations doctrine. Plaintiffs' arguments all focus on the wrong theory, and one that does not apply to this case. I apply the continuing violations doctrine that resets the statute of limitations with each unlawful act.

3 The Court noted,
> We do not decide here whether each alleged above-reasonable market value payment from the mortgage insurer to the reinsurer triggers a new three-year statute of limitations for that payment. We leave that question for the CFPB on remand and any future court proceedings.

Phh Corp., 839 F.3d at 55, n. 30.

10

application to PHH and Atrium in this case, is accordingly reinstated as the decision of the three-judge panel on those questions." Id. at *83. Based on the foregoing, I find that defendants' argument is unavailing.

Defendants offer no new arguments that would convince me that the continuing violations doctrine is inapplicable. Defendants merely assert the same arguments under the veil of a different standard, which is nothing more than a second bite at the apple. I find that the continuing violations doctrine applies to plaintiffs' RESPA claims.

### B. Plaintiffs' knowledge and/or lack of diligence are irrelevant to the application of the continuing violations doctrine

Defendants next argue that even if the continuing violations doctrine is generally applicable to RESPA violations, here plaintiffs' claims remain untimely because they were brought more than one year after they had knowledge of the claim. This argument is unavailing.

Defendants seem to conflate the two separate theories of the continuing violations doctrine. As discussed in my opinion deciding plaintiffs' motion to amend, I noted the two separate theories under the doctrine:

> With the first type of theory, the limitations period on a claim does not necessarily begin to run as soon as its essential elements fall into place, or when the plaintiff becomes aware that he or she has the makings of a valid cause of action. Instead a claim subject to this approach will continue to build and absorb new wrongful acts for so long as the defendant perpetuates its misconduct. With the second type of theory, the limitations period begins to run again and again on a day-by-day, act-by-act, or similarly parsed basis.

(Doc. No. 47 at 19, n. 8.) Based in part on the court's decision in PHH, discussed supra, I applied the latter form of the doctrine to find plaintiffs' RESPA claims timely. I find

11

further support for the application of this theory in the plaintiffs' amended complaint, which seeks damages only for the time period one year prior to the date of the accrual. (Am. Compl. at ¶ 174.) Plaintiffs do not seek to aggregate earlier wrongful acts that would otherwise be untimely. Cf. Santee v. Lehigh Valley Health Network, Inc., No. 13-3744, 2013 WL 6697865, at *6 (E.D.Pa. Dec. 19, 2013) and Smith v. Township of Warren, No. 14-7178, 2016 WL 7409952, at *14 (D.N.J. Dec. 22, 2016). These facts are also akin to those in Bay Area Laundry, where the court found that in the case of an installment contract, each missed payment creates a separate cause of action with its own limitations period. Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 522 U.S. 192, 207 (1997).

Defendants argue that plaintiffs' knowledge and lack of diligence bars the application of the continuing violations doctrine. In so arguing, defendants rely only on case law interpreting the first theory of the continuing violations doctrine, despite my clear conclusion that only the second theory is applicable.[4] (See Doc. No. 52 at P. 14, n.

---

4 What is more, notice and diligence are not considerations under the first theory. Under Third Circuit precedent, a plaintiff need only "(1) demonstrate that at least one act occurred within the filing period, and (2) establish that the conduct is more than the occurrence of isolated or sporadic acts, i.e., the conduct must be a persistent, on-going pattern." Danao v. ABM Janitorial Services, No. 14-6621, 2015 WL 2378644, at *17 (E.D.Pa. May 19, 2015). In assessing the second element, the Third Circuit previously set forth three factors that a court must consider in determining whether the doctrine applies: "(1) subject-matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing way; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." Cowell v. Palmer Tp., 263 F.3d 286, 292 (3d Cir. 2001). However, in Mandel v. M&Q Packaging Corp., the Court expressly held that there is no longer a permanency requirement. 706 F.3d 157, 166 (3d Cir. 2013) (interpreting the Supreme Court's holding in National Railroad Passenger Corp. v.

12

21.) Defendants also rely on Cunningham and Riddle, and yet these cases only discussed the application of equitable tolling, which is a separate and distinct theory that includes a diligence analysis. These arguments have no application to this case.

Unlike certain equitable remedies that have a diligence requirement, the continuing violations doctrine applicable to this case resets the statute of limitations with each unlawful act, regardless of knowledge. See In re Mushroom Direct Purchaser Antitrust Litigation, No. 06-620, 2016 WL 8459462, at *8 (E.D.Pa. Dec. 13, 2016) ("In the case of a continuing price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.") (citing In re Processed Egg Prod. Antitrust Litig., No. 08-2002, 2012 WL 6645533, at *3 (E.D.Pa. Dec. 20, 2012) (quoting Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997)) (internal quotations omitted).

I find, as I previously held in my opinion deciding plaintiffs' motion to amend, that RESPA would be violated each and every time an unlawful fee or kickback was accepted or delivered. Each allegation resets RESPA's one-year statute of limitations, regardless of plaintiffs' earlier notice of the wrongdoing.

---

Morgan, 536 U.S. 101, 122 (2002)). Although courts in this district have repeatedly cautioned that the continuing violations doctrine "is not a substitute for a plaintiff's awareness of and duty to assert his/her rights in a timely fashion," Bennett, 592 Fed. App'x at 85, there is no express notice requirement. It is an equitable remedy that the court has discretion to apply.

### C. Plaintiffs forfeited tolling under American Pipe

Defendants also assert that the statute of limitations was not tolled under the American Pipe doctrine. I find that although the American Pipe doctrine is applicable to this case, plaintiffs' forfeited that tolling when they filed the instant class action complaint before the final resolution of class certification in Samp, et al. v. JPMorgan Chase Bank, N.A., et al., No. 11-1950 (C.D. Cal). Therefore, this action is untimely and plaintiffs' RESPA claims are dismissed.

1. American Pipe Tolling is Applicable to this Action

The Supreme Court announced in American Pipe that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974). The Court reasoned, "[s]ince the imposition of a time bar would not in this circumstance promote the purposes of the statute of limitations, the tolling rule we establish here is consistent both with the procedures of Rule 23 and with the proper function of the limitations statute." Id. at 555. The Supreme Court later extended this holding to include "all asserted members of the class, not just as to intervenors." Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 350 (1983) (internal citations and quotations omitted). Subsequently, the Third Circuit extended the doctrine to include "would-be class members who file a class action following the denial of class certification due to Rule 23 deficiencies of the class representative." Yang v. Odom, 392 F.3d at 104.

I find that this case falls squarely within American Pipe and its progeny. The plaintiffs in Samp, like the plaintiffs here, brought claims for RESPA violations and common law unjust enrichment, alleging that defendants' reinsurance agreements constituted unlawful kickbacks and fee-splitting. Samp, No. 11-1950. The filing of this substantially similar class action lawsuit tolled the statute of limitations under American Pipe.

Defendants set forth multiple iterations of the same argument rejecting the applicability of the doctrine, asserting: "[l]ike the plaintiffs in Samp, Plaintiffs loans closed more than one year before the filing of the Samp complaint and Plaintiffs would not have been permitted to proceed with their claims as intervenors in Samp." (Doc. No. 52 at 17.) Defendants urge that the Court in Yang warned against this very application of the doctrine. (Doc. No. 58 at 1-2.)

This argument entirely misses the mark. Yang warned against permitting "plaintiffs the benefit of American Pipe tolling to sequentially relitigate a denial of class certification based on a Rule 23 deficiency in the class itself." 392 F.3d at 105 (emphasis supplied). Here, no court has determined that class certification is inappropriate. In fact, the Samp Court never reached this issue. Rather it is undisputed that the court's dismissal in Samp was based on the lead plaintiffs' untimely filing, unrelated to the substantive claims for certification. Under prevailing Third Circuit precedent, this is exactly the type of scenario contemplated by the Court in American Pipe. See Leyse, 538 Fed. App'x at 162 ("the fact that the [prior] action's status as a would-be class action was terminated by administrative closure rather than denial of class certification is irrelevant to the issue of

tolling under American Pipe."); see Yang, 392 F.3d at 107 ("Given that American Pipe tolling would unquestionably apply were the plaintiffs here to bring individual actions, it would be at odds with the policy undergirding the class action device, as stated by the Supreme Court, to deny plaintiffs the benefit of tolling, and thus the class action mechanism, when no defect in the class itself has been shown.").

This finding is also consistent with the policies underpinning the statute of limitations. Defendants were on notice of the substantive claims brought against them by the plaintiffs in Samp, including the number of potential plaintiffs and the subject matter of the litigation.[5] See American Pipe, 414 U.S. at 554-55. There was no potential for unfair surprise because defendants were on notice of the need to preserve witnesses and evidence pertaining to the class. Crown, Cork & Seal Co., Inc., 462 U.S. at 353.

Based on the foregoing, I find that the American Pipe doctrine applies to this case and the statute of limitations was tolled by the filing of the Samp action.

2. Plaintiffs forfeited tolling under American Pipe

Although I find that the statute of limitations was tolled by the American Pipe doctrine, I also find that plaintiffs forfeited their right to tolling when they filed a subsequent class action prior to a final resolution in the Samp action. This issue is a novel one that has not been addressed by the Third Circuit. I find support for my conclusion in

---

[5] Defendants argue that they lack notice because plaintiffs assert a new legal theory in this action. I disagree. Plaintiffs do not assert new facts or a new legal claim. They only allege that their claims are timely under the continuing violations doctrine and American Pipe. Defendants themselves acknowledge that plaintiffs "pursue the same RESPA claim based on the same underlying conduct that they brought in Samp." (Doc. No. 56 at 7.) This is sufficient to put defendants on notice of the claims raised against them.

16

the policy underlying the American Pipe doctrine as well as holdings in this district and sister circuits that lend guidance to this issue.

Plaintiffs argue that they did not forfeit American Pipe tolling reasoning, "this District Court has followed the analysis of the Second, Ninth, and Tenth Circuits in holding that the filing of a separate action prior to a final determination on class certification does not bar plaintiffs from claiming the benefit of American Pipe tolling." (Doc. No. 55 (citing In re Proc. Egg Prods. II, 2012 WL 6645533, at *8).)

Plaintiffs lend too broad a meaning to the holding in In re Processed Egg Products. That case, and those it relied upon, involved individual suits that were filed before class certification was resolved. See Id. at *7; (citing In re Worldcom Sec. Litig., 496 F.3d 245, 256 (2d Cir. 2007) (holding that "the tolling required by American Pipe . . . applies also to class members who file individual suits before class certification is resolved.") (emphasis supplied)). These decisions rested in large part on the underlying purpose for the doctrine:

> While reduction in the number of suits may be an incidental benefit of the American Pipe doctrine, it was not the purpose of American Pipe either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of American Pipe to protect the desire of a defendant not to defend against multiple actions in multiple forums. The American Pipe tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

In re WorldCom, 496 F.3d 245 at 256 (internal citations and quotations omitted). These courts expressly limited their holdings to the filing of individual suits to protect class members, and I can find no justification for extending American Pipe to subsequent class

17

action suits filed prior to the resolution of class certification. I am cognizant of the important purpose served by the statute of limitations. To permit plaintiffs in a class action suit to benefit from the doctrine before class certification is resolved would essentially swallow the exception to the rule and would result in the "multiplicity of activity which Rule 23 was designed to avoid." American Pipe, 414 U.S. at 551. Notions of fairness and judicial economy require me to find that the plaintiffs forfeited American Pipe tolling when they filed the complaint before the resolution of class certification.[6] Therefore, this action is untimely filed and Count Three is dismissed as barred by the statute of limitations.[7]

### D. Unjust Enrichment

Having dismissed plaintiffs' RESPA claims as untimely, I decline to exercise supplemental jurisdiction over their remaining state law claims for unjust enrichment. See 28 U.S.C. 1367(c)(3); Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 (3d Cir. 1999). Accordingly, Count Four is dismissed without prejudice.

### V. Conclusion

I find that plaintiffs' amended complaint is untimely. Defendants' motion to Dismiss plaintiffs' RESPA claims pursuant to Rule 12(b)(6) is granted with prejudice.

---

[6] Although the instant action was filed only three days before the final resolution in Samp, to permit American Pipe tolling in this instance would result in a slippery slope that would work to nullify the statute of limitations in subsequent cases. A clear distinction is required.

[7] Because I am dismissing plaintiffs' RESPA claims as untimely, I need not reach the issue of whether plaintiffs have standing to sue JPMorgan Chase & Co. and Chase Bank USA, N.A.

Defendants' motion to dismiss plaintiffs' unjust enrichment claim is granted without prejudice, and the amended complaint is dismissed.

An appropriate Order follows.